UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  -against-<br><br>BELLE SHORE CONDOMINIUM LLC, DELKAP MANAGEMENT, INC., and JOEI LOSITO,<br>                Defendants. | **COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Civil Action No.<br>24-CV-2414<br><br>(_____, J.)<br>(_____, M.J.) |

------------------------------------------------------------------X

Plaintiff, the United States of America, by its attorney, BREON PEACE, United States Attorney for the Eastern District of New York, Geoffrey M. Stannard, Assistant U.S. Attorney, Of Counsel, for its complaint, alleges as follows:

## INTRODUCTION

1. The United States of America brings this action pursuant to the Fair Housing Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601, *et seq.* (the Act).

2. This civil action is brought by the United States on behalf of Priscilla Hand. Ms. Hand is an African American woman with a disability who owns a unit and resides at Belle Shore Condominium (the Condominium). As described below, in violation of the Act's protections of individuals with disabilities, Defendants refused to accommodate Ms. Hand's reasonable request for a designated, accessible parking space. Defendants also discriminated against Ms. Hand based on her race when they refused to help her obtain a parking space, even though they had

previously offered to facilitate an accommodation to a White resident with a disability who sought a parking space.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 3612(o).

4. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c). Defendants Belle Shore Condominium LLC and Delkap Management, Inc. have their primary places of business in this district, and defendant Joei Losito resides in this district.

5. The Attorney General is authorized by 42 U.S.C. § 3612(o) to commence this civil action to enforce the provisions of the Act.

## PARTIES

6. Plaintiff is the United States of America.

7. Defendant Belle Shore Condominium LLC (Belle Shore) is a New York-based for-profit company and the governing body responsible for managing and maintaining the building, common areas, and facilities of the Condominium.

8. Defendant Delkap Management, Inc. (Delkap) is the property management company contracted by Defendant Belle Shore to manage and maintain the building, common areas, and facilities of the Condominium on Belle Shore's behalf.

9. Defendant Joei Losito is the Property Manager employed by Defendant Delkap to oversee the day-to-day operations of the Condominium.

**FACTS**

10. Ms. Hand is an aggrieved person under 42 U.S.C. § 3602(i)(1). She has been diagnosed with a total, permanent mental health disability and is a person with a disability as defined by the Act, 42 U.S.C. § 3602(h).

11. The symptoms of Ms. Hand's condition make it nearly impossible for her to use public transportation. She must drive her own car and park as near to her destination as possible to avoid crowds. Searching for parking spaces in her neighborhood causes her stress, which exacerbates her condition. Ms. Hand has possessed a handicap license plate issued by the New York City Department of Motor Vehicles since the summer of 2021.

12. Ms. Hand has owned and resided at a unit at the Condominium since 2019, but she does not own a parking space.

13. The Condominium has 64 parking spaces, three (3) of which (spaces #6, #35, and #36) were designated "handicapped parking spaces" at the time the Condominium's offering plan (the Offering Plan) was published in 2005. Each parking space was deeded, and initially, the accessible parking spaces were available only to purchasers with disabilities. However, as the Condominium's units and parking spaces sold, no qualifications were placed on who could purchase the accessible parking spaces.

14. The Offering Plan, contemplating that a resident with a disability might require an accessible parking space in the future, states, in pertinent part:

> In the event that a prospective Purchaser or Residential Unit Owner already owns a space needed by a person meeting the requirements for a handicapped parking space, the Purchaser of a designated handicapped Parking Space Unit will be required to either lease, sell or swap the designated handicapped Parking Space Unit to a disabled resident of the Condominium.

15. The requirement that non-disabled residents must lease, sell, or swap their designated handicapped parking space to a disabled resident is reiterated in the Condominium By-Laws (the By-Laws):

> Owners of designated handicapped Parking Space Units who are not a [sic] disabled person as defined in the Federal Fair Housing Amendments Act of 1988 (the "Act") must either lease, sell or swap the designated handicapped Parking Space Unit to a disabled person of [sic] the Act and who has been issued a handicapped parking space sticker or permit from the City or State of New York who is a resident of the Condominium, if requested.

16. The Condominium is managed by a Board of Managers (the Board) that, according to the By-Laws, "may exercise all such powers of the Condominium and do all such lawful acts and things as are not by Statute or by the Declaration or by these By-Laws, directed or required to be exercised or done by the Residential Unit Owners personally."

17. In the spring or summer of 2021, E.F.,[1] a White condo owner at the Condominium, sought information from Defendant Belle Shore about obtaining an accessible parking space. Defendant Belle Shore was highly motivated to fulfill her request and was ready to initiate the process. A member of the Board told E.F. she would be able to purchase one of the accessible parking spaces for $50,000. E.F. was never told that she would need to contact the owner of the parking space directly. E.F. ultimately decided not to proceed with purchasing a parking space.

18. On January 26, 2022, Ms. Hand contacted Defendants Losito and Belle Shore by email to request a reasonable accommodation to facilitate the process of acquiring an accessible parking space.

19. Contrary to the treatment that E.F. received, Defendant Belle Shore stated, "[t]he association and the management does [sic] NOT own the parking spaces or handle the sale

---

[1] Initials are being used to preserve E.F.'s privacy.

of them." A member of the Board nonetheless emailed Ms. Hand and instructed her to put her request in writing to Defendant Losito to "begin the process."

20. Later that same day, Defendant Losito emailed Ms. Hand, in relevant part, "Please be advised that this request has already been addressed by other homeowners. The response remains the same. There are no parking spaces allocated as 'handicap.' . . ." This information was contrary to the By-Laws, which reference three accessible parking spaces in the complex.

21. On February 11, 2022, Ms. Hand emailed Defendants to ask again about how to obtain an accessible parking space. She wrote that according to the bylaws, there were three accessible parking spaces in the complex. She added:

> [P]lease help me in obtaining one of the 3 spots available. I spoke with [E.F.] in unit [REDACTED] and she informed me that she was offered a handicap parking spot but decided to back out for personal reasons. What is the difference between myself and [E.F.]. The only difference I see is pigmentation. We both have a handicap.

22. On February 11, 2022, Defendant Losito and Board member E.C. both emailed Ms. Hand separately to tell her that there were no accessible parking spaces at the Condominium, as all spaces had been purchased by individual unit owners.

23. On May 4, 2022, Ms. Hand emailed Defendants for a third time to request that they intervene to help her secure an accessible parking space. Ms. Hand also requested that Defendants identify all accessible parking spaces and provide contact information for their respective owners.

24. Later that same day, Board member E.C. replied to Ms. Hand's email, stating that the parking spaces were "deeded property" that were converted to "regular spaces" and

5

that the Condominium "no longer has handicapped spaces." E.C. denied Ms. Hand's request for the accessible space owners' contact information.

25. To date, Ms. Hand has been unable to purchase an accessible parking space.

## HUD ADMINISTRATIVE PROCESS

26. On September 20, 2022, Ms. Hand timely filed a complaint with the United States Department of Housing and Urban Development ("HUD").

27. Pursuant to 42 U.S.C. § 3610(a) and (b), the Secretary of HUD conducted and completed an investigation of the complaint, attempted conciliation without success, and prepared a final investigative report. Based upon the information gathered in the investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that illegal discriminatory housing practices had occurred.

28. On February 13, 2024, the Secretary issued a Charge of Discrimination, pursuant to 42 U.S.C. § 3610(g)(2)(A), charging the above-named Defendants with engaging in unlawful discrimination in violation of the Fair Housing Act.

29. On March 1, 2024, Defendants elected to have the claims asserted in the HUD Charge resolved in a civil action pursuant to 42 U.S.C. § 3612(a).

30. On March 7, 2024, an Administrative Law Judge issued a Notice of Election to Proceed in United States Federal District Court and terminated the administrative proceeding on Ms. Hand's complaint.

31. Following this Notice of Election, the Secretary of HUD authorized the Attorney General to commence this civil action pursuant to 42 U.S.C. § 3612(o).

## FIRST CLAIM FOR RELIEF

32. The United States repeats and realleges the allegations contained in paragraphs 1 through 31 as if set forth fully herein.

33. Section 804 of the Act, 42 U.S.C. § 3604, provides that it shall be unlawful

(f)(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person[;]

(f)(3)(B) For purposes of this subsection, discrimination includes . . . a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling[;]

34. Defendants violated the Act by discriminating against Ms. Hand based on her disability when they denied Ms. Hand's reasonable accommodation request and refused to facilitate the potential transfer of an accessible parking space to Ms. Hand or to enforce Condominium policy requiring accessible parking spaces to be made available to residents with disabilities.

## SECOND CLAIM FOR RELIEF

35. The United States repeats and realleges the allegations contained in paragraphs 1 through 31 as if set forth fully herein.

36. Section 804 of the Act, 42 U.S.C. § 3604, provides that it shall be unlawful

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin[.]

37. Defendants discriminated against Ms. Hand in violation of the Act when they refused to facilitate the potential transfer of an accessible parking space to Ms. Hand in 2022

but offered to facilitate such a transfer to a White Condominium resident who made a request similar to Ms. Hand's the previous year.

WHEREFORE, Plaintiff United States of America requests that the Court enter judgment:

A. Declaring that Defendants' conduct as alleged above violated and continues to violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, *et seq.*;

B. Awarding Ms. Hand monetary damages pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1);

C. Enjoining Defendants and their agents and employees from engaging in the practice of unlawfully discriminating on the basis of disability or race with regard to requests for accommodations relating to parking spaces pursuant to 42 U.S.C. §§ 3612(o)(3) and 3613(c)(1);

D. Ordering Defendants to facilitate the transfer of a designated accessible Parking Space Unit from any non-disabled person who owns one to Ms. Hand; and

E. Granting such other and further relief that is just and proper.

Dated: Brooklyn, New York
April 1, 2024

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

By: */s/ Geoffrey M. Stannard*
Geoffrey M. Stannard
Assistant United States Attorney
(718) 254-6229
geoffrey.stannard@usdoj.gov